# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| STACY KNIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-01226 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| PROVIDENT LIFE AND ACCIDENT ) | |
| INSURANCE COMPANY and UNUM GROUP ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court are three dispositive motions related to plaintiff Stacy Knight's claims for disability benefits against the defendants, Provident Life and Accident Insurance Company and Unum Group Corporation (collectively, "Unum"). Unum has filed a Motion for Summary Judgment (Docket No. 28) and a Motion for Judgment on the Record (Docket No. 33). Knight has filed a cross-Motion for Judgment on the Record. (Docket No. 34.) For the reasons stated herein, the court will deny Unum's motions, the court will grant Knight's Motion for Judgment in part and deny it in part without prejudice, and the court will remand Knight's claims for further administrative proceedings.

## BACKGROUND

**I.** **Overview**

The plaintiff, Stacy Knight, formerly worked as a production technician for Nissan North America, Inc. ("Nissan") at its Smyrna, Tennessee location. In 1999, Knight stopped working

1

due to lower back pain,[1] and on June 16, 2000, Knight submitted a claim for long-term disability ("LTD") benefits under a group policy issued by Unum.[2] On July 23, 2000, Unum approved Knight's claim and paid him LTD benefits until 2012.

In an April 11, 2012 letter ("Denial Letter"), Unum notified Knight that it was terminating his LTD benefits. That letter stated that Knight had 90 days (until July 10, 2012) to appeal the adverse determination by Unum. On or about April 25, 2012, an attorney representing Knight asked Unum to provide Knight's claim file, which Unum provided to the attorney on or about May 11, 2012. Knight did not file an appeal by July 10, 2012. On July 23, 2012, a different attorney for Knight (now Knight's counsel in this lawsuit) wrote to Unum to request Knight's claim file. On August 21, 2012, through that new counsel, Knight filed an appeal with Unum supported by updated documentation. Unum refused to consider the appeal, contending that it was untimely.

Knight filed the instant lawsuit on November 27, 2012, contending that his administrative appeal was in fact timely and that, on the merits, he is entitled to LTD benefits from Unum under 29 U.S.C. §§ 1132(a)(1)(B). The parties have filed competing motions concerning the appropriate disposition of Knight's claim for benefits. Unum argues that it is entitled to summary judgment and/or judgment on the administrative record because Knight failed to timely exhaust his administrative remedies. By contrast, Knight argues that his claims actually were timely and

---

[1] According to Unum's internal claims administration notes, Knight stopped working and took disability leave as of December 15, 1999.

[2] At the time Knight was injured, Knight was eligible for benefits under a "Group Long Term Disability Insurance Policy" between Unum and "Nissan Motor Manufacturing Corporation U.S.A." On an unspecified date thereafter, effective April 1, 2000, the contracting parties amended the definitions of "Policyholder" and "Employer" to be "Nissan North America, Inc."

that the court should reverse Unum's denial of benefits or, in the alternative, remand his claim for further proceedings. In the course of briefing these motions, the parties have filed a remarkable volume of materials. (*See* Docket Nos. 28-31, 33-38, 43-44, 46, 48, 53, 54, 56, 58-60, and 65.)[3] The record now contains a polyglot of policy documents, plan documents, LTD benefits booklets issued by Unum, and an employee benefit manual.[4]

As explained in the court's February 5, 2014 Memorandum and Order, familiarity with which is assumed, the parties' motions raise essentially four disputed issues:

(1) When Unum terminated Knight's LTD benefits in April 2012, was Knight statutorily entitled to a minimum of (a) 60 days to file an appeal under pre-2002 ERISA regulations, or (b) 180 days under post-2002 ERISA regulations?

(2) Even if Unum was statutorily required to afford Knight only 60 days to appeal, did Unum and/or Nissan voluntarily amend the procedures for appeals at some point after 2002 in a manner that would apply to Knight's April 2012 appeal?

(3) Even if the pre-2002 regulations apply to the termination letter and Unum did not violate its own procedures related to timing, did the April 11, 2012 Denial Letter fail to "substantially comply" with pre-2002 ERISA regulations?

(4) Even if the termination letter and the appellate deadline set forth therein otherwise complied with ERISA and Unum's procedures, does the Tennessee "notice-prejudice" doctrine prevent Unum from refusing to consider Knight's otherwise untimely appeal?

---

[3]In its February 5, 2014 Memorandum and Order, the court ordered the parties to file supplemental briefs addressing whether Unum and/or Nissan voluntarily amended the procedures for appeals after 2002 in a manner that would have applied to Knight's 2012 appeal. Unum and Knight filed supplemental briefs (Docket Nos. 59 (Unum) and 60 (Knight)), and Unum filed a Reply to Knight's supplemental brief (Docket No. 65).

[4]Unum objects to consideration of any of these materials on grounds of relevance and/or authentication. For the reasons explained here, the court appropriately has considered these materials in its analysis.

Because the court finds in favor of Knight on the second of these arguments, the court need not address the remaining arguments.

## II. The Record

### A. The Policy

When Knight filed his claim and initially was granted LTD benefits by Unum, his claim for benefits was governed by an insurance policy between Nissan and Unum, Policy No. 3954-01 (the "Policy"). Consistent with then-prevailing ERISA regulations, that policy provided that claimants would have 60 days to file an appeal of an adverse benefit determination. (*See* Policy at p. 21.) The Policy was integrated and purported to grant Unum plenary discretion to interpret the Policy, apply its terms, and administer claims. (*Id.* at pp. 23-24.) In a merger clause, the Policy states that it will be administered according to the Policy and "not according to any plan summary, by whatever name called, used by the Employer and which has not been approved by us." (*Id.* at p. 24.)[5]

### B. Unum's Claims Administration and LTD Booklets

Unum ceased serving as Nissan's disability insurer effective December 31, 2004. With respect to claims filed by current or former Nissan employees before that date, such as Knight's,

---

[5]The Policy was amended multiple times between 1995 and 2004. The 1997 amendment (the third amendment to the original insurance policy) replaced the previous version of the insurance policy wholesale. Before possessing copies of the subsequent amendments, Knight had argued that the Policy had been amended to reflect a 180-day appeals deadline. In September 2013, Unum produced the remaining amendments by court order. Confirming the position that Unum had previously taken under oath, those amendments do not reflect any amendment to the appellate deadlines stated in the 1997 version of the Policy. Since possessing the post-1997 amendments, Knight has not argued that the subsequent amendments otherwise affect the court's analysis. Therefore, the court will rely on the 1997 version of the Policy, the relevant aspects of which were not thereafter amended.

Unum continued to administer the claims.

Effective from at least November 1, 2000 through December 31, 2004, Unum periodically drafted and distributed "Long-Term Disability Benefits Booklets", each of which was comprised of (1) a "Group Long Term Disability Insurance Certificate" ("Certificate") and (2) an addendum purporting to summarize then-applicable ERISA regulations ("ERISA Addendum"). Each LTD Booklet contains the following language in the ERISA Addendum:

> The following information with the information contained in the preceding Certificate of Insurance comprises the Summary Plan Description under [ERISA] only for the benefits described in the preceding Certificate of Insurance.
>
> 1. The name of the Plan is Nissan North America, Inc.'s Comprehensive Security Plan.
> . . .
> 5. Benefits are provided in accordance with the provisions of Group Policy No. 3954-01 ("Policy") . . . .

Each LTD Booklet also states as follows: "Status as a Covered Person and coverage under the Policy will continue: 1. while you are disabled; . . . ."

In the only pre-2002 LTD Booklet in the record, which purports to have been effective November 1, 2000, the Certificate states that "you may request in writing review of a denial of your claim within 60 days after you receive notice of denial." The ERISA Addendum similarly states that "[y]our appeal must be made within sixty (60) days of the date of receipt of the letter denying the claim."[6]

Effective January 1, 2002, the Department of Labor promulgated new regulations applicable to "claims filed under a plan on or after January 1, 2002." 29 C.F.R. § 2560.503-1

---

[6]The record does not contain any LTD Booklet for the time period preceding November 1, 2000.

5

(current 2014). In most relevant part, the new regulations required that every employee benefit plan provide claimants at least 180 days to appeal an adverse benefit determination. *Id.* § 2560.503-1(h)(3)(i).

In contrast to the pre-2002 LTD Booklet, the cover letter for each post-2002 LTD Booklet states under "Effective Date": "November 1, 2000, **ERISA revised January 1, 2002**." (Emphasis in original.) Unlike the pre-2002 LTD Booklet, the post-January 1, 2002 LTD Booklets contain an internal inconsistency: the Certificate continues to state that "[y]ou may request in writing review of a denial of your claim within 60 days after you receive notice of your denial[,]" whereas the ERISA Addendum states that "[y]ou have *180 days* from the receipt of Notice of an adverse benefit determination to file an appeal." (emphasis added.)

### C. Nissan Employee Benefit Plans and the 2008 Employee Benefits Manual

The record contains no copies of the employee benefit plan(s) in effect before 2003, although the LTD Booklets explicitly reference the plan. However, the record does contain copies of Nissan's employee benefit plans from April 1, 2003 forward.

The first is a "Comprehensive Security Plan," which purports to be "Amended and Restated Effective April 1, 2003" and to constitute a "Plan Document."[7] That document, which the court will refer to as the 2003 Plan, repeatedly references ERISA provisions and purports to incorporate the terms of an "SPD" that is "attached hereto as Appendix D." In the version of the 2003 Plan in the record, Appendix D is blank. Notwithstanding this omission, the 2003 Plan

---

[7]The record does not contain the previous version of the "Comprehensive Security Plan" that the April 2003 Plan purported to amend and restate.

repeatedly refers to the SPD and incorporates its terms by reference.[8]

The second is an amended and restated version of the Plan, effective January 1, 2004. (*See* Docket No. 37, Ex. 1 ("2004 Plan"), at § 1.1.) This version of the Plan was in place while Unum was still serving as Nissan's disability insurer. By its own terms, the 2004 Plan "is intended to satisfy the written documentation requirements of Section 402 of [ERISA]." (*Id.* § 1.2.) As with the April 2003 Plan, the 2004 Plan purports to incorporate by reference "all Incorporated Documents listed in Appendix A," (*Id.* § 1.4), but the document contains no Appendix A. According to Knight's counsel here, counsel for Nissan suggested to Knight's counsel that the page may have been lost. At any rate, the 2004 Plan defines a "Covered Person" to include "an Employee or *former Employee*." (*Id.* § 2.6 (emphasis added).) The 2004 Plan also states that its procedures concerning claims administration "shall not apply to the extent that claims and appeals procedures are set forth differently in an Incorporated Document," although, as noted, the version in the record contains no attached "Incorporated Document[s]." Perhaps most importantly, the 2004 Plan contains an internal inconsistency: in § 9.9A, a "covered person who has had a claim [for] long-term disability . . . denied by the Claims Administrator, shall have the right to request review of the claim. Such request must be writing and must be made within *60 days* after such claimant is advised of the Claims Administrator's action" (emphasis added); however, in § 9.9B, a person who is denied a "health claim," defined to include a claim for "long-

---

[8] *See, e.g.*, 2003 Plan Art. II preamble ("Many Plan terms are defined in the SPD, and as such, are incorporated herein."); § 3.04 ("An individual will cease to be an Enrolled Person, and all Benefit coverage with respect to such individual and his or her Enrolled Dependents will end, as of the earliest of . . . (b) the Enrolled Person's loss of eligibility to participate in the Plan (as set forth in the SPD)."); § 5.07 ("The process by which a claim for benefits shall be handled by the Administrator and the process by which a Participant may appeal the denial of a claim for benefits are set forth in the SPD and incorporated herein by reference.")

term disability insurance benefits," is entitled to "*180 days*" to file an appeal. (emphasis added.)

The third is a "Non-VEBA Welfare Plan," effective January 1, 2007, which, by its own terms was intended to terminate and consolidate the Comprehensive Security Plan and other plans. (*See* Docket No. 53, Attachment No. 3 at p. 2 ("2007 Plan").) The 2007 Plan purports to list and/or attach "Incorporated Documents" in an Appendix. The Appendix, which bears the subtitle "Applicable Incorporated Documents," lists only two documents: (1) "The Employee Benefits Manual (Summary Plan Description)"; and (2) "Supplemental Retirement Benefits Policy Number: H-108 Version 1.3." The "General Claims Procedures" in the January 2007 Plan "shall apply to every claim for a benefit under the Plan regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred." (*Id.* § 7.1.s) The 2007 Plan states that "[t]he Plan incorporates the terms of all Incorporated Documents listed in Appendix A." (*Id.* § 1.4.) However, the Plan states that "the Plan shall govern in the case of any discrepancies or differences in interpretation between the terms, conditions or language in the Plan and the Incorporated Documents." (*Id*; *see also* § 2.11.) Unlike the 2004 Plan, the 2007 Plan defines "Covered Person" to mean an "Employee or Retiree." (*Id.* § 2.4.) The 2007 Plan states that a Covered Person "who has had a claim for long-term disability benefits wholly or partially denied by the Insurer or is otherwise adversely affected by action of the insurer" shall have "180 days" to appeal the adverse action. (*Id.* § 7.9B.)

The fourth is another Nissan "Non-VEBA Welfare Plan," which was amended and restated effective January 1, 2011 (" 2011 Plan"). The 2011 Plan exempts Retirees from coverage, but otherwise contains substantially the same relevant terms as the 2007 Plan.

The 2008 Employee Benefits Manual, which appears to be the "Employee Benefits

8

Manual" incorporated by reference into the 2007 Plan and the 2011 Plan, indicates that former employees are covered under the Plan. (*See* Docket No. 60, Ex. 4.) In a Section entitled "Plan Identification Information," the manual contains a subsection identifying the "Insurer/Claims Fiduciary LTD Only." Within that subsection, the "Insurer/Claims Fiduciary" for "LTD" claims is identified as (1) Metropolitan Life Insurance Company (MetLife) and (2) "for claims incurred before January 1, 2005: UNUM Provident Corporation." (*Id.* at p. 178.) In a later section relating to disability claims "submitted to the LTD insurer" and otherwise considered by the "LTD Insurer," the Plan states that, for a "denied claim," "[y]ou . . . must make an appeal in writing within 180 days of the date you received the claim denial notice." (*Id.* at 192.) The section goes on to describe how the "LTD Insurer" is obligated to handle that appeal.

## ANALYSIS

I. **ERISA Provisions and Administrative Exhaustion**

   A. **ERISA Provisions Related to Plan Documents and Recovery of Welfare Benefits**

Under 29 U.S.C. § 1002, the terms "employee welfare benefit plan" and "welfare plan" mean "any plan, fund, or program which . . . is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . . disability . . . ." Under ERISA § 402, "[e]very employee benefit plan must be established and maintained pursuant to a written instrument."

Under 29 U.S.C. § 1021, the administrator of an employee benefits plan must furnish to each plan participant and plan beneficiary a "summary plan description." *Mitzel v. Anthem Life*

9

*Ins. Co.*, 351 F. App'x 74, 79-80 (6th Cir. 2009) The summary plan description must contain specific information, such as the procedures for addressing denials of claims, and it must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Mitzel*, 351 F. App'x at 79 (citing § 1022(a)). An SPD that is not incorporated into a plan document cannot vary the terms of the Plan. *See Engleson v. Unum Life Ins. of Am.*, 723 F.3d 611, 620 (6th Cir. 2013) (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011)).[9] By the same token, because ERISA requires the SPD to include "the remedies available *under the plan* for the redress of claims which are denied in whole or in part," the SPD cannot establish appeal procedures that are not included in the written instrument constituting the Plan. *See Kaufmann v. Prudential Ins. Co. of Am.*, 840 F. Supp. 2d 495 (D.N.H. 2012) (collecting cases).

Under ERISA § 404(a)(1)(D), a plan administrator must discharge its duties with respect to the plan in accordance with the documents and instruments governing the plan. *Shelby*, 203 F.3d at 934. "In interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person." *Id.* Accordingly, where no ambiguity exists as to the meaning of plan provisions, the plan administrator must

---

[9]*See also Sullivan v. CUNA Mut. Ins. Society*, 649 F.3d 553, 557-558 (7th Cir. 2011) ("[*CIGNA*] holds that silence in a summary plan description about some feature of a pension plan does not override language in the plan itself. The Justices observed that it is essential to a 'summary' plan description that things be left out; a summary plan description covering every feature of a plan would not be a 'summary.' Moreover, the court held, even if a summary plan description contradicts the full plan, the terms of the full plan continue to govern participants' entitlements. ERISA direct judges to enforce the terms of a plan; it does not authorize judges to change those terms.")

apply the plan provisions as written. *Univ. Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 850 (6th Cir. 2000).

A beneficiary or participant in an employee benefit plan may bring a civil action to recover benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)). Benefits must be paid in accordance with the documents and instruments that govern the plan. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009).

### B. Administrative Exhaustion

Although ERISA itself is silent on the issue of exhaustion, the Sixth Circuit has found that an ERISA plan beneficiary must exhaust administrative remedies prior to filing suit for recovery on an individual claim under § 502(a)(1)(B). *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005). Regardless, "[t]he application of the administration exhaustion requirement in an ERISA case is committed to the sound discretion of the district court . . . ." *Fallick*, 162 F.3d at 418.

### C. Construction of the Plan

Where, as here, the administrator has discretionary authority to determine eligibility for benefits and to construe the plan's terms, the court reviews any denial of benefits for abuse of discretion. *Farhner v. United Transp. Union Discipline Income Prot. Prog.*, 645 F.3d 338, 343 (6th Cir. 2011). Arbitrary and capricious review requires an administrator's decision to be upheld as long as it is "rational in light of the Plan's provisions" and "supported by substantial evidence." *Id.* The administrator's rational interpretation of a plan will be upheld, even if the party challenging the denial offers an equally rational interpretation. *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

However, arbitrary and capricious review is not a rubber stamp of administrative action. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). Where no ambiguity exists as to the meaning of plan provisions, the plan administrator must apply the plan provisions as written. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000). Also, "[a] plan administrator's interpretation of ambiguous provisions must [] be reasonable" and "based on the language of the Plan." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 935 (6th Cir. 2000). The issue of reasonableness is a question of law. *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir. 1989). Finally, although plan administrator's conflict of interest does not alter the standard of review, it is a factor that should be taken into account in determining whether the decision was arbitrary and capricious. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998).[10]

## II. Analysis

### A. The Plan and the SPD

Here, Unum takes the position that the court should simply ignore all documents in the record other than the Policy itself. This position is untenable. Nissan had an employee benefit plan in place while Unum was administering claims, and the iterations of that Plan constituted the "written instrument" defined by ERISA § 402. It is the written instrument that the court must construe and administer.

Furthermore, although the Supreme Court recently found that an SPD that is not incorporated into a "written instrument" cannot vary the terms of that "written instrument," *see*

---

[10]Here, Unum both funded Nissan's LTD benefit program and administered LTD claims thereunder (such as Knight's claim).

*CIGNA*, 131 S. Ct. 1866, the Court's holding did not address the situation in which the plan itself incorporates the SPD. Here, unlike in *CIGNA*, each iteration of the Plan incorporated the SPD by reference, meaning that the Plan and associated SPD must be construed together. *See, e.g., Tetrault v. Reliance Std. Life Ins. Co.*, 2011 WL 7099961, at *7 (D. Mass. Nov. 28, 2011).

Indeed, ERISA relates to the administration of employee benefit plans, not funding mechanisms. Although it is possible for an insurance plan to constitute a plan document, here it is clear that, while Unum was administering claims for Nissan, the Policy was not the only plan-related document for ERISA purposes; indeed, Nissan's Plans explicitly identified themselves as plan documents for purposes of ERISA. It would entirely frustrate ERISA's purposes for the court to act like the benefit plan itself did not exist. Moreover, each iteration of the Plan incorporated an SPD, including, for the final years that Unum administered the Plan, SPDs drafted by Unum and implicitly "approved" by them for purposes of the Policy. Consideration of these records is therefore necessary, as they are part and parcel of the court's analysis as to whether Unum arbitrarily and capriciously rejected Knight's claims on procedural grounds. *See, e.g., Agin v. Liberty Life Assurance Co. of Boston*, 2006 WL 1722228, at *9 (W.D. Mich. June 21, 2006) (finding that consideration of plan-related documents was not an impermissible attempt to "expand the record").

The court also finds Unum's position that the Policy terms require absolute adherence to the 60-day limitation to be without merit. First, Unum itself allowed Knight and other claimants *90 days* to appeal adverse benefit determinations filed before the 2002 ERISA amendments, necessarily reflecting at least the exercise of discretion afforded to it under the Policy. Second, the Policy itself indicates that its terms are subject to changes "approved" by Unum, which would

13

include SPDs that *Unum itself prepared* for Nissan relative to administration of claims under the Policy and that were separately incorporated by reference into Nissan's prevailing benefit plan.[11] Therefore, it appears that Unum's LTD Booklets were the "SPDs" incorporated into Nissan's employee benefit plan and into the Policy itself. Third, neither Nissan nor Unum ever amended the Policy to reflect (1) Unum's apparently unilateral decision to afford pre-2002 claimants 90 days to appeal, and (2) the 2002 ERISA amendments, which made the "60-day" limitation stated in the Policy illegal. Under the circumstances, the court concludes that the "60-day limitation" was not immutable under the contract's terms, nor did Unum regard it as such in practice.

Furthermore, even assuming that Unum was not by default required to afford pre-2002 claimants more than 60 days to appeal, a plan's terms and/or the terms of its administration by the claims administrator can be amended or varied *voluntarily* to provide individuals already "on claim" more than the requisite 60-day default for pre-2002 claims. *See Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 844 (6th Cir. 2003) ("[P]lan administrators may modify a welfare plan's terms at any time . . . ."); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001); *Smathers*, 298 F.3d 191, 196-97 (3rd Cir. 2002) (finding that, where claims administrator has discretionary authority, procedural provisions "are not implicated until the administrator actually exercises that authority"); *Agin*, 2006 WL 1722228, at *10-11. Unum's exercise of this discretion relative to pre-2002 claimants necessarily acknowledges this principle. Many of the same aforementioned authorities, including at least one district court within this

---

[11]Although the record does not contain a 2003 or 2004 Plan with an attached SPD, Unum promulgated the LTD Booklets, represented to Nissan and potential claimants that each booklet was the "SPD" relative to Nissan's Plan for purposes of ERISA, and represented to this court that the booklets constituted the SPD. (*See, e.g.*, Docket No. 43 at p. 6 n.4 and p. 7.)

circuit, have found that "a plan amendment that only alters a procedural or administrative aspect of a benefit determination does not affect a claimant's benefits, and therefore may be retroactively applied." *Williams v. Target Corp.*, 2013 WL 5372877, at *8-9 (E.D. Mich. Sept. 25, 2013); *see also Price v. PBG Hourly Penson* Plan, 921 F. Spp. 2d 764, 773 (E.D. Mich. 2013); *Smathers*, 298 F.3d at 196-97. Furthermore, as Knight has pointed out, insurers and/or claims administrators, including Unum affiliates, have taken the position that the plan's terms are subject to amendments that *restrict* a claimant's ability to recover benefits. *See generally Grosz-Salomon*, 237 F.3d 1154.[12] Although the court makes no finding of judicial estoppel in this regard, cases like *Grosz-Salomon* do indicate that arguments concerning the immutability (or lack thereof) of prior terms of plan documents and/or claims administration terms may be *ad hoc* legal positions taken for the insurer's benefit in a particular scenario.

With these considerations in mind, the court must analyze the import of the interactions among the interlocking documents in the record.

## III. <u>Analysis</u>

Having examined the Plans, the LTD Booklets, and the Employee Benefits Manual, the court concludes that Knight had 180 days to file his appeal. First, the 2004 Plan, which was the last version of the Plan in effect while Unum served as Nissan's disability insurer, expressly included former employees as "covered persons," a definition that includes Knight. That version of the Plan also contains an irreconcilable inconsistency: it provides in one section that LTD claims were subject to a 60-day appeals deadline (which in fact would have been illegal under

---

[12]Here, Unum does not dispute Knight's contention that the defendant in *Grosz-Salomon*, Paul Revere Life Insurance Company, is an Unum Group company. (*See* Docket No. 48 at p. 8.)

ERISA regulations) and in another section that LTD claims were subject to a 180-day appeals deadline. Unum has offered no explanation as to how these terms could be construed harmoniously. Furthermore, the associated LTD Booklet in place through December 31, 2004, which Unum represented was the SPD, states both that claimants had 60 days to appeal and that they had 180 days to appeal. Although Unum drafted that document unilaterally, it left this inconsistency in the document. The LTD Booklets also explicitly stated that coverage as a "Covered Person" under the Policy would continue "while you are disabled," a definition that (1) included Knight, (2) was consistent with the 2004 Plan's representation that it explicitly applied to former employees, (3) was incorporated by reference into the 2003 and 2004 Plans, and (4) is inconsistent with Unum's position here that Knight was not a covered person under the 2003 Plan. Furthermore, Unum has offered no meaningful explanation as to why the court should find some magic in the 60-day limitation in the Certificate portion of the LTD Booklet, where Unum itself utilized a different limitation of 90 days.

Complicating matters further, it appears that Nissan's 2011 Plan, which was the Plan in place when Unum terminated Knight's LTD benefits, incorporated an Employee Benefits Manual that itself indicated that pre-2002 claims were subject to a 180-day appeals deadline. Given that the manual defines Unum as the "LTD insurer" for claims filed before January 1, 2005, it must be that the manual's terms (and by incorporation, the Plan itself) were meant to apply to pre-2005 claims that Unum continued to administer, such as Knight's. If the court were to read the manual otherwise, the references to Unum would be mere surplusage, because the time for a plan participant or beneficiary to have filed a new claim subject to Unum's administration would have expired years earlier. Therefore, the 2011 Plan must reasonably be construed as establishing a

16

180-day appeals deadline for individuals already "on claim" with Unum, such as Knight.

Remarkably, Unum has provided no meaningful indication that it *actually* sought to "interpret" any document other than the original Policy itself. That is, the court has no reason to conclude that Unum actually made any effort to construe the Policy in light of the LTD Booklets incorporated by reference into the 2003 and 2004 Plans, the terms of the 2004 Plan itself (which explicitly covered Knight's claim), and the 2011 version of the Plan that necessarily applied to Knight. Unum's lack of knowledge about these documents is distressing in light of ERISA's requirement that claims be administered consistent with plan terms.[13] Unum has not identified any plan document referencing a 90-day appeals deadline. These considerations reinforce the court's conclusion that Unum arbitrarily and capriciously applied a 90-day appeals deadline to Knight's claims, without any meaningful consideration as to how that deadline accorded (or not) with the terms of the Plan and the relevant SPD incorporated therein at a given point in time.

Under the circumstances, the court finds that Knight was entitled to 180 days to appeal Unum's termination of continuing benefits. The terms of the 2004 Plan (incorporating the associated LTD Booklet) are not ambiguous with respect to appellate deadlines; instead, they contain irreconcilable inconsistences that include a misrepresentation about the post-2002 default deadlines. (*See* 2004 Plan § 9.9A.) The only reasonable way to construe the 2004 Plan consistent with the law is to read it as establishing a 180-day appeals deadline for former employees who were "on claim." That construction is also consistent with the terms of the 2011 Plan, which provide a 180-day deadline for all claims. Moreover, relevant authority indicates

---

[13]The court is also confounded by Nissan's apparent failure to maintain complete copies of plan-related documents.

that the procedural terms of the Plan applicable when Unum made its adverse benefit determination (*i.e.*, the 2011 Plan) should govern Knight's claim.

Finally, even if the court were to construe the documents as simply ambiguous – which is not possible in light of their terms – the court would exercise its discretion to excuse Knight's failure to exhaust administrative remedies. As the court has explained, the applicable appellate deadlines were, at best, incomprehensible, and there was no reason for them to be. Therefore, the circumstances presented would otherwise justify the court's exercise of discretion to excuse Knight from meeting the 90-day appeals deadline stated in the Denial Letter.

In sum, the court finds that Unum arbitrarily and capriciously denied Knight a full and fair review of Unum's April 2012 decision to terminate Knight's LTD benefits.

## IV. Appropriate Remedy

Having determined that Unum committed a procedural error that precluded Knight from receiving a full and fair review of his claims under ERISA, the court has discretion to fashion an appropriate remedy, such as awarding benefits or remanding the claim for further administrative proceedings. Here, where Unum's defect was purely procedural and Knight's appeal has not been addressed on its merits, the court finds that remand to Unum for further administrative proceedings is the appropriate remedy. *See Shelby Cnty. Health Care Corp v. The Majestic Star Casino, LLC*, 581 F.3d 355, 373-74 (6th Cir. 2009) ("[W]here the plan administrator fails to comply with ERISA appeal-notice requirements in adjudicating a participant's claim, the proper remedy is to remand the case to the plan administrator so that a full and fair review can be accomplished"); *Elliott v. Metro Life Ins. Co.*, 473 F.3d 613, 621-622 (6th Cir. 2006); *Walsh v. Metro. Ins. Co.*, 2009 WL 603003, at *6-7 (M.D. Tenn. Mar. 9, 2009). Given the passage of time

and in the interest of providing Knight a full and fair opportunity to contest Unum's termination of his LTD benefits, Knight will have 30 days to file any updated records that he believes are relevant to his appeal.

Ultimately, Unum is simply being required to address Knight's administrative appeal on its merits, which is a just result. The court expresses no opinion concerning whether Knight should or should not receive continuing LTD benefits under the Policy, which is a matter reserved to Unum's discretion going forward.

Because the case will be referred to Unum for further administrative proceedings, the court will deny Unum's motions and grant Knight's Motion for Judgment only to the extent it requested that relief. However, the court will not enter a final judgment in favor of Knight, because the court's order of remand for further administrative proceedings is not a "final order" of this court. *See Bowers v. Sheet Metal Works Nat'l Pension Fund*, 365 F.3d 535, 536 (6th Cir. 2004). The court will therefore administratively close the case pending Unum's adjudication of Knight's administrative appeal.

## **CONCLUSION**

For the reasons stated herein, the court will grant in part and deny in part Knight's Motion for Judgment on the Record, deny Unum's Motion for Summary Judgment and Motion for Judgment on the Record, remand Knight's claim for further administrative proceedings consistent with the court's directives set forth herein, and administratively close the case.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge